UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**25-CR-20483-MARTINEZ/SANCHEZ**

CASE NO.: _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 3147
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

JEAN JOSEPH,
   a/k/a "Jon," and
JANALIE CAMILLE BINGHAM,
   a/k/a "Janalie Camille Joseph,"

           Defendants.

_____/

FILED BY _____ BM _____ D.C.

Oct 30, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Definitions

1.     A "promissory note" is a financial instrument that contains a written promise by one party to pay another party a definite sum of money, either on demand or at a specified future date. A promissory note contains key terms pertaining to the debt and obligation, such as the principal amount, interest rate, maturity date, place of issuance, and issuer's signature.

2.     A *"Ponzi"* or *"Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk. In many *Ponzi* schemes, the participants

focus on attracting new money to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business. *Ponzi* schemes require a consistent flow of money from new investors to continue and tend to collapse when it becomes difficult to recruit new investors or when a large number of investors ask for their money back.

### The Defendants

3.      Defendants **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM** were married and residents of Boca Raton, Florida.

4.      **JEAN JOSEPH** became a convicted felon in Case Number 19-cr-20177-RAR (S.D. Fla.) in or around March 2020.

5.      **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM** ran and operated Wells Real Estate Investment, LLC ("Wells Real Estate").

6.      **JANALIE CAMILLE BINGHAM** was the Chief Executive Officer of Wells Real Estate.  **JEAN JOSEPH** did not have an official position at Wells Real Estate.

### Wells Real Estate & Related Entities

7.      Wells Real Estate was a Wyoming limited liability company formed in or around 2017 and headquartered in West Palm Beach, Florida.

8.      Wells Real Estate was advertised as a "real estate acquisition and development company that focused on identifying, acquiring, and managing residential and commercial real estate assets in strategically targeted locations in the United States."

9.      Wells Real Estate offered promissory notes to investors.  Wells Real Estate would purportedly use investor funds to add "value to existing residential and commercial assets and zoned parcels of land to be used as long-term revenue-generating properties."

10.      Investors were offered 18, 28, and 36-month promissory notes paying varying

amounts of interest.

11.     On or about October 15, 2019, **JANALIE CAMILLE BINGHAM** opened an account in the name of Wells Real Estate at Bank of America ending in 5029 ("Wells Real Estate Account x5029").

12.     Texas Company-1 was a Wyoming limited liability company headquartered in San Antonio, Texas.   Individual-1 served as Senior Managing Director of Texas Company-1. Individual-1 and Texas Company-1 worked with several salespeople to sell Wells Real Estate's promissory notes to investors.

## Victims

13.     Victim "L.D." was a resident of Miami-Dade County, Florida.

14.     Victim "J.F." was a resident of Fort Bend County, Texas.

15.     Victim "K.J.R." was a resident of Fort Bend County, Texas.

16.     Victims "P.A.P." was a resident of Broward County, Florida.

17.     Victim "R.A.W." was a resident of Lake County, Florida.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD
## (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2.     From in or around October 2019, through in or around October 2024, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JEAN JOSEPH,**
**a/k/a "Jon," and**
**JANALIE CAMILLE BINGHAM,**
**a/k/a "Janalie Camille Joseph,"**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine,

3

conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.       It was the purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by (i) making materially false and fraudulent representations to investors in Wells Real Estate, including omitting, concealing, and failing to state material facts to investors concerning, among other things, the assets, profitability, and security of investing in Wells Real Estate; and (ii) misappropriating investor money for their own personal use and benefit and that of others.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.       The defendants incorporated Wells Real Estate and advertised to the public that the company sold safe promissory notes backed by a valuable real estate portfolio.  At one point in time, the defendants falsely alleged that the portfolio was worth approximately $450,000,000.

5.       The defendants opened and maintained bank accounts in the name of Wells Real Estate, including Wells Real Estate Account x5029, at financial institutions located in the Southern

4

District of Florida.

6.      The defendants concealed the involvement of **JEAN JOSEPH** in Wells Real Estate.  **JOSEPH** did not hold an official position with the company, nor was he identified or disclosed on any of the company's investor documents. Nonetheless, **JOSEPH** in fact controlled the company with **JANALIE CAMILLE BINGHAM** by, among other activities, participating in the training and interviewing of employees, organizing and leading regular meetings with staff, and directing the allocation of investors' money.

7.      To further conceal his involvement, when interacting with employees, sales agents, and investors, **JEAN JOSEPH** misrepresented that his first name was "Jon."

8.      **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM** worked with Individual-1 and Texas Company-1, and several salespeople managed by Individual-1 and Texas Company-1, to sell Wells Real Estate's promissory notes to investors.

9.      The defendants, through their co-conspirators and associates, represented to investors that the money generated from the sale of promissory notes would be used to invest in real estate.  For example, the company's Private Placement Memorandum ("PPM") stated that "proceeds from the sale of the Notes will be used by [Wells] to acquire whole or fractional investment interests in real property[.]"

10.      Unbeknown to investors, **JEAN JOSEPH** diverted approximately $28 million of investor money into speculative equities trading.  **JOSEPH** established a "trading room" in his residence and boasted to employees that he could "double" Wells Real Estate's money through trading.  **JANALIE CAMILLE BINGHAM** opened more than 42 brokerage accounts in which **JOSEPH** traded.

11.      **JEAN JOSEPH** lost approximately $12 million of investors' money trading

equities.

12.     **JEAN JOSEPH** shared with associates that one of the reasons he traded in equities was that Wells Real Estate did not generate enough income to support its business operations.

13.     Beginning in or around 2020, the defendants used new investor money to pay off old investors.  Between in or around 2020 through in or around 2024, the defendants falsely and fraudulently diverted approximately $14 million of investor funds to make *Ponzi*-like payments to investors to satisfy interest obligations and Note redemptions.

14.     Contrary to the false and fraudulent representations made to investors, including representations in the PPM that "Notes will be offered and sold by the Company's Management who will not receive remuneration in connection with the placement of Notes[,]" Wells Real Estate used internal and external sales agents to solicit investors and used investor funds to pay commissions to sales agents.

15.     The defendants spent over $3.5 million of investor funds on themselves, including cash withdrawals, the purchase of luxury cars, the purchase of a 6-bedroom home, and the settlement of a private lawsuit.

16.     The defendants raised over $50 million from approximately 600 investors based on material misrepresentations and omissions.

17.     To induce investors to provide money to Wells Real Estate, **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM**, their co-conspirators, and sales agents made and caused others to make numerous materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

## Materially False Statements

(a)     that Wells Real Estate owned a real estate portfolio with an estimated valuation of $450,000,000;

(b)     that Wells Real Estate would use investor funds to add value to real estate properties;

(c)     that the Wells Real Estate promissory notes were a safe investment, secured, and guaranteed; and

(d)     that Wells Real Estate's business was successful and profitable.

## Concealment and Omission of Material Facts

(a)     that approximately $28 million of investors' money was spent on speculative equity trading;

(b)     that internal and external salespeople made a percentage commission based on every investment;

(c)     that **JEAN JOSEPH** was a convicted felon who controlled the company;

(d)     that over approximately $12 million of investor funds were lost trading equities;

(e)     that **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM** misappropriated millions of dollars of investor funds;

(f)     that new investor money was used to pay prior investor debt; and

(g)     that Wells Real Estate's business was unprofitable.

18.     **JEAN JOSEPH** committed the above offense while on supervised release in *United States v. Jean Joseph*, Case Number 19-cr-20177-RAR (S.D. Fla.).

All in violation of Title 18, United States Code, Sections 1349 and 3147.

## COUNTS 2-11
## WIRE FRAUD
## (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. From in or around October 2019, through in or around October 2024, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JEAN JOSEPH,**
**a/k/a "Jon," and**
**JANALIE CAMILLE BINGHAM,**
**a/k/a "Janalie Camille Joseph,"**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendants and their accomplices to unjustly enrich themselves by (i) making materially false and fraudulent representations to investors in Wells Real Estate, including omitting, concealing, and failing to state material facts to investors concerning, among other things, the assets, profitability, and security of investing in Wells Real Estate; and (ii) misappropriating investor money for their own personal use and benefit and that of others.

8

## THE SCHEME AND ARTIFICE

4.     Paragraphs 4 through 18 of the Manner and Means section of Count 1 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF THE WIRES

5.     On or about the dates specified as to each count below, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
| --- | --- | --- |
| 2 | Jan. 29, 2021 | Interstate wire transfer of approximately $40,000 from L.D.'s Publix Employees Federal Credit Union, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 3 | Aug. 3, 2021 | Interstate wire transfer of approximately $100,000 from R.A.W.'s Addition Financial Credit Union, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 4 | Sept. 1, 2021 | Interstate wire transfer of approximately $100,000 from K.J.R.'s Bancorp South, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 5 | Oct. 20, 2021 | Interstate wire transfer of approximately $20,000 from P.A.P.'s Wells Fargo, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 6 | Nov. 24, 2021 | Interstate wire transfer of approximately $100,000 from J.F.'s Wells Fargo, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 7 | May 6, 2022 | Interstate wire transfer of approximately $30,000 from P.A.P.'s Wells Fargo, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 8 | Aug. 4, 2022 | Interstate wire transfer of approximately $100,000 from K.J.R.'s Frost, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 9 | May 4, 2023 | Interstate wire transfer of approximately $100,000 from P.A.P.'s Citibank, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 10 | Aug. 10, 2023 | Interstate wire transfer of approximately $50,000 from P.A.P.'s Citibank, N.A. bank account to Wells Real Estate Account x5029 in the Southern District of Florida. |
| 11 | Aug. 10, 2023 | Interstate wire transfer of approximately $61,500 from R.A.W.'s Hancock Whitney, N.A. bank account to Wells Real Estate Investment 's Bank of America NA bank account ending in 3550 in the Southern District of Florida. |

6.    **JEAN JOSEPH** committed the above offense while on supervised release in *United States v. Jean Joseph*, Case Number 19-cr-20177-RAR (S.D. Fla.).

In violation of Title 18, United States Code, Sections 1343, 3147, and 2.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1.    The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **JEAN JOSEPH** and **JANALIE CAMILLE BINGHAM**, have an interest.

2.    Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

_____
ROGER CRUZ
ELI S. RUBIN
ASSISTANT UNITED STATES ATTORNEYS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO.: **25-CR-20483-MARTINEZ/SANCHEZ**

v.

JEAN JOSEPH, a/k/a "Jon," and
JANALIE CAMILLE BINGHAM,
a/k/a "Janalie C. Joseph," _____ /
            Defendants.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- ☑ Miami   ☐ Key West   ☐ FTP
- ☐ FTL   ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __10__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I ☐ 0 to 5 days
   - II ☑ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV ☐ 21 to 60 days
   - V ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☐ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge __Donald M. Middlebrooks__ Case No. 24-cv-80980-DMM

9. Defendant(s) in federal custody as of Jean Joseph, a/k/a "Jon," September 09, 2025

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By _____
Roger Cruz
Assistant United States Attorney
FL Bar No. 157971

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   JEAN JOSEPH, a/k/a "Jon"

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Sections 1349 and 3147
* **Max. Term of Imprisonment:** Thirty (30) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or twice the gross gain or gross loss for the offense

Count #2-11:

Wire Fraud

Title 18 United States Code, Sections 1343 and 3147
* **Max. Term of Imprisonment:** Thirty (30) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or twice the gross gain or gross loss for the offense

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   JANALIE CAMILLE BINGHAM, a/k/a "JANALIE C. JOSEPH"

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** Twenty (20) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or twice the gross gain or gross loss for the offense

Count #2-11:

Wire Fraud

Title 18 United States Code, Section 1343
* **Max. Term of Imprisonment:** Twenty (20) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or twice the gross gain or gross loss for the offense

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**